# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br><br>a 2017 Kia Optima, white in color, bearing Arizona Temporary Plate 212040B, with VIN: 5XXGT4L39HG145776 | ) ) ) ) Case No. 21MU30 ) ) |

## APPLICATION FOR TRACKING WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841 and 846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☐ evidence of a crime;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
a 2017 Kia Optima, white in color, bearing Arizona Temporary Plate 212040B, with VIN: 5XXGT4L39HG145776 at 307 W 9th Ave or 320 Rosalia St in Oshkosh, Eastern District of Wisconsin or any publicly accessible location

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: __09/04/2021__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*3/5/2021 @ 12:23 PM*
*Applicant's signature*

Jeremiah M Winscher, DEA Task Force Officer
*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim P. 4.1 by TELEPHONE:

Date: 3-5-2021

*Judge's signature*

City and state: Green Bay, WI

James R Sickel, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR A WARRANT AUTHORIZING THE INSTALLATION AND MONITORING OF A TRACKING DEVICE IN OR ON A 2017 KIA OPTIMA, WHITE IN COLOR, WITH AN ARIZONA TEMPORARY PLATE 212040B, VIN: 5XXGT4L39HG145776 | Case No. 21MJ630<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A TRACKING WARRANT

I, Jeremiah M Winscher, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a 2017 Kia Optima, white in color, bearing Arizona Temporary Plate 212040B, with VIN: 5XXGT4L39HG145776 ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of violations of Title 21 U.S.C § 841(a)(1), 841(b)(1)(a) and 846, and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am a Special Agent (SA) with the WI DOJ – Division of Criminal Investigation (DCI) and currently assigned and deputized as a Task Force Officer (TFO) with the US DOJ – Drug Enforcement Administration (DEA). I have been a law enforcement officer in Wisconsin

since 2007, initially as a Wisconsin State Patrol Trooper and since 2011 as a SA with the WI DOJ DCI working primarily in narcotics investigations, and a TFO with the DEA since March of 2018 working exclusively in narcotics investigations at the state and federal level. This experience, in addition to my training, is how I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed, and the various crimes that arise from narcotics trafficking. During my time as a law enforcement officer, I received instruction on how to conduct criminal investigations, which included training in narcotics investigations at the state and federal level. I am also familiar with the exploitation of investigative techniques related to the installation, use and maintenance of GPS tracking devices and have utilized said devices on numerous occasions in the past. Furthermore, I have found the GPS tracking devices as useful and reliable in the seizure of evidence related to the crimes under investigation as it relates to identification of individuals involved in said crimes as well as facilitating the discovery of locations where fruits of said individual's crimes are stored.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. On or about August 28, 2019 FBI SA Danny Diaz contacted me in reference to a methamphetamine investigation originating out of the Wausau, Marathon County area. FBI SA Danny Diaz advised me that on August 28, 2019, Brian CLARK, was stopped by local police and found to be in possession of methamphetamine. Further investigation determined that CLARK was supplied the methamphetamine by Cole WATSON earlier that day. WATSON was

2

ultimately arrested by local authorities at his Wausau residence and found to be in possession of a significant quantity of methamphetamine. Further investigation showed, based initially on an interview with WATSON, was supplied by an individual who resided at an address of 458 W 5th Avenue, Oshkosh, WI, and used cell phone number 920-410-2093. Additionally, it was suspected that this male was supplied methamphetamine from "Levi" using cell number 602-632-3900, who resided in Arizona. During an interview with WATSON, he reported being supplied methamphetamine from Levi in Arizona in pound quantities and would drive to Oshkosh to meet with Levi's brother at a local stash house located at 458 W 5th Ave, Oshkosh, Eastern District of Wisconsin. Based on conversations with other investigators, I know that WATSON provided information in return for consideration on pending charges. WATSON has multiple drug convictions (including felony and misdemeanor), multiple felony convictions including but not limited to misappropriation, and multiple misdemeanor convictions including but not limited to resisting/obstructing, misappropriation crimes and bail jumping. A search warrant was obtained for WATSON's cellular phone which substantially corroborated WATSON's claims of obtaining significant quantities of meth from Levi and traveling to Oshkosh to meet Levi's brother to acquire it. The phone numbers 602-632-3900 ("Levi") and 920-410-2093 ("Oshkosh brother") were also corroborated.

5. I, and other investigators, obtained corroborating information which showed Cory FREYERMUTH as the primary resident of 458 W 5th Ave in Oshkosh who also used a phone number of 920-410-2093. Oshkosh Police in house records also showed FREYERMUTH was associated in the past with a Levi BAGNE. I also know that FREYERMUTH frequently associates with 307 W 9th Ave in Oshkosh, Eastern District of Wisconsin, where a co-

3

conspirator, Melissa LOFGREN resides. Additionally, I know that FREYERMUTH also frequents the address of 320 Rosalia St in Oshkosh, Eastern District of Wisconsin.

6. At the commencement of this investigation, FREYERMUTH was shown to be driving a black in color Pontiac Grand Prix, which was registered to him. FREYERMUTH was involved in a crash in the Grand Prix in November of 2019 that resulted in FREYERMUTH being arrested for Operating While Intoxicated. Since that time, FREYERMUTH has not been shown to operate the Grand Prix. While FREYERMUTH was using the Grand Prix, a number of drug transactions involving the Grand Prix were observed by investigators whereas FREYERMUTH would use the Grand Prix to travel to locations where "dead drop" style transaction would occur. A "dead drop" drug transaction is a means of disguising or distancing ones self from the actual "hand to hand" exchange whereas a customer would leave money at a predetermined location and depart while the supplier (FREYERMUTH) would go to that location to obtain the money and leave the drugs in its place and then depart and the customer would return to depart with the drugs and neither party would have actual contact with the other.

7. After the November 2019 incident described in paragraph 6, FREYERMUTH was shown to be a primary operator of a Gold Chevy Cavalier which was registered to FREYERMUTH's girlfriend, and co-conspirator, Melissa LOFGREN. The Cavalier was also used on numerous occasions by FREYERMUTH to travel to locations to conduct "dead drop" style transactions with others. This court had authorized a GPS tracking warrant upon the Cavalier in January of 2020 which provided valuable evidence of travels and meeting locations concerning this investigation. Additionally, this vehicle was used by both FREYERMUTH and LOFGREN to conduct suspected money laundering transactions at Wells Fargo in Neenah,

4

Wisconsin whereas FREYERMUTH and/or LOFGREN would make cash deposits directly into the bank account of Levi BAGNE; who was identified as the supplier in Arizona.

8. Ownership of the Chevy Cavalier described in paragraph 7 was ultimately transferred away from LOFRGREN. In February of 2020, law enforcement surveilled a vehicle owned by Levi BAGNE, a silver Nissan Frontier, in Stevens Point, WI, which BAGNE had driven from Arizona. BAGNE ultimately drove the vehicle to Oshkosh, WI, and was seen meeting with FREYERMUTH. BAGNE departed the area by airplane on, or around, March 2, 2020 but the Nissan Frontier remained in Wisconsin whereas FREYERMUTH was subsequently observed as a primary operator of the Nissan Frontier. Additionally, registration of the Nissan Frontier was transferred to Melissa LOFGREN and has remained in Wisconsin since February of 2020. Since that time FREYERMUTH has been shown to use the FRONTIER on numerous occasions, as recently as February of 2021, to meet with customers for suspected drug transactions. Additionally, and similar to the circumstances involving the aforementioned Chevy Cavalier, the Nissan Frontier has also been shown to be utilized by FREYERMUTH and/or LOFGREN to conduct suspected money laundering activities at Wells Fargo and other financial institutions sending money to Levi BAGNE. This court authorized a GPS tracking warrant for the Nissan Frontier in August of 2020 which provided valuable evidence to substantiate drug transactions, travels and storage locations. Additionally, this court authorized a second GPS tracking warrant upon the Nissan Frontier in February of 2021 which is currently actively being monitored.

9. In regards to the February of 2021 GPS tracking warrant referenced in paragraph 8, this warrant was executed upon the Nissan Frontier on February 24, 2021 while it was parked in a publicly accessible hotel parking lot in Oshkosh, WI. In close proximity to this, I was able

5

to determined that Melissa LOFGREN rented a room at the hotel from February 22, 2021 through February 25, 2021. I found this unusual because LOFGREN lives in close proximity to the hotel. I was also able to observe FREYERMUTH at the hotel. On Saturday, February 27, 2021, law enforcement investigators were able to determine that Matt WHITE, a known co-conspirator and customer of Levi BAGNE and Cory FREYERMUTH, had traveled to Stevens Point and was in the area of the Econolodge Hotel at the intersection of US Highway 10 and Interstate 39. Stevens Point is the area most recently utilized by BAGNE and FREYERMUTH as a central meeting spot to transfer methamphetamine to their customers which FREYERMUTH has been shown to do on multiple occasions in the Chevy Cavalier and Nissan Frontier, as well as a Nissan Maxima owned by an associate of FREYERMUTH. Through electronic surveillance, investigators were able to confirm the presence of Matt WHITE's vehicle at the Econolodge in Stevens Point on February 27, 2021. Additionally, WHITE is shown to be accompanied by what appeared to be a white Cadillac. While reviewing surveillance footage, I also observed a white passenger vehicle with dark tinted windows pull into the parking lot for a brief period of time and then quickly depart. Later on the same date, February 27, 2021, I traveled past 320 Rosalia St in Oshkosh and observed a white passenger vehicle with dark tinted windows parked outside of the address. This vehicle was determined to be the SUBJECT VEHICLE bearing an Arizona temporary plate of 212040B. I noted there was an Arizona dealer license plate bracket around the temporary plate which showed a valid trip permit for Cory FREYERMUTH from February 25, 2021 through April 11, 2021. I contacted a law enforcement officer in Arizona who told me that this likely indicated that FREYERMUTH purchased the vehicle; which of note, matched the description of the white passenger vehicle with dark tinted

6

windows observed at the Econolodge on February 27, 2021 where Matt WHITE's vehicle was also observed.

10. Futhermore, on Sunday, February 28, 2021, I traveled past the address of 307 W 9th Ave in Oshkosh and observed the SUBJECT VEHICLE parked on the street. The previously mentioned Nissan Frontier was also present along with the vehicle of a known associate of FREYERMUTH which that party and FREYERMUTH have used to travel to Stevens Point in the past to conduct drug transactions. I was able to conduct surveillance on the SUBJECT VEHICLE and observed it travel to a local drinking establishment. While conducting surveillance I observed Cory FREYERMUTH as the operator of the SUBJECT VEHICLE when it departed one bar and traveled to the next; and again from one bar to yet another and ultimately to Taco Bell and back to 307 W 9th Ave. I believe that FREYERMUTH will remain the principle operator of the SUBJECT VEHICLE.

11. Throughout this investigation law enforcement has seized a number of items of methamphetamine contraband through various means including, but not limited to, parcel interdiction of an approximately 2 and 4 pound parcels containing meth which were destined for FREYERMUTH's address in Oshkosh, vehicle traffic stop of a customer having just met with FREYERMUTH in Stevens point of approximately 1 pound of methamphetamine as well as a search warrant upon a storage unit in Stevens Point rented by FREYERMUTH (where BAGNE was also observed) of approximately 10 pounds of methamphetamine. Additionally, suspected drug transactions have been further corroborated through service of multiple search warrants to BAGNE's cellular provider to obtain historical text message content in close proximity to times when FREYERMUTH used a vehicle to travel to meet with a customer for the transaction.

12. Based on the totality of the circumstances surrounding this investigation, it has been shown that nearly every vehicle that FREYERMUTH had consistent access to has been utilized to continue and facilitate criminal activity. Due to the fact that FREYERMUTH now has readily available access to the SUBJECT VEHICLE, I believe that installing a GPS tracker upon the SUBJECT VEHICLE will provide significant evidence to further identify potential travel patterns, co-conspirators and especially meeting and contraband stash locations.

13. Based on my this investigation, I know that the SUBJECT VEHICLE is presently within the Eastern District of Wisconsin and is stored primarily at 307 W 9th Ave or 320 Rosalia St in Oshkosh, Eastern District of Wisconsin.

14. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to place a tracking device on the SUBJECT VEHICLE while it is in the Eastern District of Wisconsin. Because Cory FREYERMUTH and/or Melissa LOFGREN sometimes parks the SUBJECT VEHICLE in driveways and on other private property, it may be necessary to enter onto private property and/or move the SUBJECT VEHICLE to affect the installation, repair, replacement, and removal of the tracking device. SUBJECT VEHICLE has been observed at both 307 W 9th Ave in Oshkosh or 320 Rosalia St in Oshkosh, both in the Eastern District of Wisconsin, in the recent past.

15. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. I know that those involved in the crimes outlined in this affidavit currently under investigation often times are surveillance savvy and will monitor their personal property, such as SUBJECT VEHICLE, for tampering. If law enforcement were detected installing the GPS tracking device on SUBJECT VEHICLE, it would

seriously jeopardize the investigation causing the targets of this investigation to completely terminate their activities and preventing the government from its ability to successfully and thoroughly investigation the crimes alleged. Daytime installation, while possible, is not feasible due to daytime visibility at the anticipated installation locations.

16. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

17. It is noted that this affidavit does not include every fact known to law enforcement, but rather only those necessary to demonstrate probable cause. I believe that the installation of a GPS tracking device upon SUBJECT VEHICLE will lead to the collection of valuable evidence, including the location of hidden, off-site, contraband, as well as travel patterns and drug transactions with co-conspirators both identified and yet to be identified.

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the US Department of Justice Drug Enforcement Administration or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the SUBJECT VEHICLE within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; and to install, maintain, and remove the tracking device during both daytime and

nighttime hours; and to surreptitiously enter the private property located at 307 W 9th Ave in Oshkosh or 320 Rosalia St in Oshkosh, both in the Eastern District of Wisconsin, and/or move the SUBJECT VEHICLE to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

19. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for six (6) months after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. I further note that the Government has also requested the court to seal this application, and associated documents, for a period of 6 months. This investigation is ongoing and is expected to take up to an additional 6 months to fully and successfully investigate and bring the criminal co-conspirators in front of the courts for judicial proceedings. Additionally, law enforcement seeks to determine a source of supply for Levi BAGNE, which could take an additional 6 months. I know that complex cases involving multiple defendants over a broad geographical area are time consuming and that prematurely notifying any suspect of a law enforcement action, such as those requested in this affidavit, may have a negative impact on the investigation and ultimately to the community at

10

large; preventing law enforcement from fully and successfully investigating the organization and identifying all parties involved.

20. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Drug Enforcement Administration, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

3/5/2021 @ 12:22 PM

Jeremiah M Winscher
Task Force Officer
US DOJ Drug Enforcement Administration

Sworn and attested to me by reliable electronic means pursuant to the requirements of Fed. R. Crim. P. 4.1 (TELEPHONE) on March 5, 2021

James R Sickel
UNITED STATES MAGISTRATE JUDGE

11